The STATE of Ohio, Appellee,

v.

WHITE, Appellant.

[Cite as *State v. White* (1995), 100 Ohio App.3d 62.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67024.

Decided March 20, 1995.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Laurence R. Snyder,* Assistant Prosecuting Attorney, for appellee.

*Dea L. Character–Floyd* and *Lawrence R. Floyd,* for appellant.

James D. Sweeney, Presiding Judge.

Defendant-appellant Annette White ("White") appeals from the trial court's determination that she was a probation violator. For the reasons adduced below, we affirm.

A review of the record indicates that pursuant to a plea of guilty, White was sentenced on October 25, 1990, to serve one year's total imprisonment for having violated one count each of (1) theft (R.C. 2913.02) and (2) food stamp trafficking (R.C. 2913.46). The sentence was suspended and White was placed on five years of conditional probation, to wit: (1) repay $2,349 to the Cuyahoga County Welfare Department, in equal monthly installments; (2) obtain job training and full-time employment; (3) perform forty hours of community service; (4) submit to monthly urinalysis; and (5) pay court costs. Attorney Phyllis Brooks represented White as assigned counsel through the sentencing phase of this case.

The journal reflects that at a probation violation hearing scheduled for February 5, 1991, probation was continued at White's request, and counsel (attorney Kathy McCrone) was appointed due to White's indigency. On October 5, 1993, a capias was issued for White at the request of the probation department. On March 9, 1994, the capias was returned, and White was in custody.

On March 10, 1994, the trial court conducted a probation violation hearing in open court with White being represented by court-assigned attorney Tony Manning. At this hearing, the probation officer testified that (1) White owes restitution in the amount of $2,253; (2) White has not reported for urinalysis since before August 10, 1993; (3) White turned herself in to the probation office on March 8, 1994; (4) White had tested positive for cocaine in her urine on January 29, 1991, and was continued on probation following a hearing.

When White was given the opportunity to explain her reasons for violating her probation, the following colloquy took place.

"THE COURT: I violated my own policy of not continuing people. Okay. On behalf of your client, Mr. Manning.

"MR. MANNING: Yes, Your Honor. I think she has had a problem and there are various reasons why she hasn't shown up.

"THE COURT: Would you care to tell me what the problem was, Mrs. White?

"THE DEFENDANT: As far as my urines are concerned after that in August, in June of 1991 I put myself into a treatment program. My regular lawyer has my certificates and everything.

"I have not used since June 2nd of 1992. I went to the Probation Office in August and maybe—I don't remember taking any urinalysis.

"I have not used since then. My lawyer has all the papers. I don't know where he is, my regular—

"THE COURT: Why didn't you report?

"THE DEFENDANT: Okay. On September and October I did go down, but she wasn't there. I had people waiting on me. He said he couldn't sign the papers.

"I have a note from November. I had oral surgery done on my mouth. In December my teeth were still acting up.

"I had my purse snatched and just since January found out I had TB.

"When I got in touch with my lawyer he said he would take care of me coming to turn myself in.

"THE COURT: Well, this is since March and your probation officer—

"THE DEFENDANT: March?

"THE COURT: You haven't reported since August. There has been no communication with this Court concerning your failure to be here and according to the probation officer you refused to submit a urine sample August of 1993.

"THE DEFENDANT: I don't remember that.

"THE COURT: I'm certainly going to take the word of a probation officer.

"THE DEFENDANT: You can, but I am clean. I have not used since June 2nd of 1992.

"THE COURT: I guess I would have to take your word for it, because you weren't reporting to the Probation Department as I told you to do.

"THE DEFENDANT: Yes. I do regular meetings. My regular lawyer has all my papers.

"THE COURT: You did not pay restitution.

"THE DEFENDANT: My restitution—I signed a payment agreement for them to take it out of my food stamps. I was supposed to be getting $370 in food stamps. They were supposed to be taking it out. I thought they were, because I am only getting $200 and something.

"THE COURT: Now, I told you to pay the restitution. That means you get a job. You work and you take the money from your paycheck and you pay the Welfare Department back.

"Your failure to appear, your refusal to submit to urinalysis leaves me no choice. Your probation is terminated and the sentence is ordered into execution. Good luck. One year. This is a felony of the third degree. Credit for time served.

"(Thereupon the matter was concluded.)"

The court journalized its final order on March 15, 1994, with no mention of retained counsel or any alleged lateness to the hearing by retained counsel. A

timely notice of appeal was filed on March 16, 1994. Three assignments of error are presented for review.

## I

"The trial court erred and abused its discretion to the prejudice of appellant and denied appellant's right to a fair hearing guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution in proceeding with appellant's probation violation hearing in a manner that prevented appellant from presenting an adequate defense, including evidence and witnesses on her behalf, due to no fault of her own."

The revocation of probation is governed by Crim.R. 32.3, which provides in pertinent part:

"(A) Revocation hearing. The court shall not revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing.

"(B) Counsel. The defendant shall have the right to be represented by retained counsel and shall be so advised. Where a defendant convicted of a serious offense is unable to obtain counsel, counsel shall be assigned to represent him, unless the defendant after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.
* * *

" * * *

"(D) Waiver of counsel. Waiver of counsel shall be as prescribed in Rule 44(C)."

The record on appeal does not indicate that at the start of the adjudicatory hearing appellant had retained private counsel or that this retained counsel had contacted the trial court and told the court that counsel would be late for the scheduled hearing.[1] Furthermore, there is no statement in the record pursuant to App.R. 9(C) or (D) which would (1) corroborate the allegations of appellant as to the alleged contacts of retained trial counsel with the court preceding and subsequent to the hearing or (2) detail the court's action in assigning Manning as new counsel prior to the start of the proceeding. Likewise, there is no evidence to indicate that appellant waived her right to counsel. Accordingly, the trial

---

1. The first trial court appearance of White's retained counsel, who now represents White in the present appeal, occurred on March 14, 1994, *four days after* the probation revocation hearing, when retained counsel filed a motion for bond and to stay execution of sentence pending appeal. In this motion, White raised the same arguments as are now presented on appeal.

court acted within its discretion in assigning counsel for White pursuant to Crim.R. 32.3(B) before proceeding with the hearing, where White was unable to obtain counsel at the scheduled start of the hearing. *State v. Frost* (1993), 86 Ohio App.3d 772, 621 N.E.2d 1259; *State v. McKnight* (1983), 10 Ohio App.3d 312, 10 OBR 517, 462 N.E.2d 441.

The first assignment of error is overruled.

## II

"The trial court erred and abused its discretion to the prejudice of appellant and denied appellant's right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, when it without just cause removed appellant's retained counsel and assigned new counsel from the bench at appellant's probation violation hearing and immediately proceeded with the hearing."

As stated in the preceding assignment's discussion, there is no evidence to demonstrate that at the time the hearing was scheduled to start the trial court knew of the existence or identity of appellant's retained counsel. In fact, at no point in the hearing was the identity of the retained counsel explained by the appellant, or the existence of a retained counsel relationship explained by the appellant. At best, the appellant made four brief references to "my lawyer" or "my regular lawyer." These brief references in no way put the trial court on notice that White had retained Floyd as private counsel, considering her previously ascertained indigent status and the appointment of two attorneys (Phyllis Brooks—assigned at the September 17, 1990 arraignment; Kathy McCrone—assigned at the February 5, 1991 hearing) in the case during the period preceding the hearing and the lack of an entry of appearance by Floyd in the record before the hearing.

Also, absent a statement pursuant to App.R. 9(C) or (D), it is impossible to determine the amount of time Manning had for reviewing the case and interviewing witnesses following his assignment as counsel and the start of the hearing. Allegations that Manning was unprepared or otherwise ineffective due to his prehearing investigation, or lack thereof, are based upon matters outside the record and thus not subject to review in the direct appeal from the probation revocation hearing. See R.C. 2953.21; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 4 OBR 580, 448 N.E.2d 452.

Accordingly, the trial court acted within its discretion pursuant to Crim.R. 32.3(B) in assigning counsel prior to the start of the hearing.

The second assignment of error is overruled.

## III

"The trial court erred and abused its discretion to the prejudice of the appellant, denying appellant's right to due process and a fair hearing by its bias and misconduct at the appellant's probation revocation hearing."

Based on the discussion of the previous assignments, this final assignment of error is overruled.

*Judgment affirmed.*

BLACKMON and O'DONNELL, JJ., concur.